IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

   v.

MARY ELIZABETH MILES, et al.,

      Defendants.

_____/

No. CV 10-2398 CW

ORDER GRANTING IN
PART AND DENYING IN
PART PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

    Plaintiff United States of America moves for summary judgment
pursuant to Federal Rule of Civil Procedure 56.  Defendants Mary
Elizabeth Miles, Kristina Miles-Toland and Patrick Toland[1] oppose
the motion.  Having considered the arguments advanced by the
parties in their papers and during the hearing, the Court GRANTS
in part the motion for summary judgment and DENIES it in part.

BACKGROUND

    The following facts are taken from Defendants' declarations
in support of their opposition to the motion for summary judgment.
The Court views the facts in the light most favorable to the
Defendants as the non-moving parties.

---

[1] This Defendant was added as a party on March 2, 2012.

In 1996, Ms. Miles' marriage to the now-deceased William Miles was dissolved.[2]  Miles Dec. ¶ 1.  Ms. Miles was subjected to emotional and verbal abuse throughout her marriage.  Id. at ¶ 2. The abuse was so severe that Ms. Miles had to seek professional help to cope with her conflicting views on her personal happiness and desire to save the marriage.  Id.

Mr. Miles' "abuse and controlling behavior" rendered Ms. Miles incapable of making financial decisions.  Id. at ¶ 3. During the marriage, Mr. Miles kept Ms. Miles from knowing their net worth and did not permit her to participate in financial matters.  Id.  Mr. Miles gave Ms. Miles a strict budget to adhere to for household and personal expenses.  Id.

In 1998, Mr. Miles asked Ms. Miles to sign a tax return for the 1995 tax year.  He "threatened to tear apart the family should [she] not comply with his wishes."  Id. at ¶ 4.  Mr. Miles also threatened to complicate the settlement proceedings for the division of marital assets unless Ms. Miles agreed to sign the return.  Id.  Moreover, Ms. Miles was under the influence of pain medication and struggling financially.  Id. at ¶¶ 5-7.  Mr. Miles assured Ms. Miles that he would pay the tax liability, and Ms. Miles believed him because he had the means to pay.  Id. at ¶ 8.

_____

[2] In her Case Management Statement, Ms. Miles adds that she married Mr. Miles in 1967, she and Mr. Miles were separated and no longer living together as of 1986 and the divorce was finalized in May 1996.  In its Case Management Statement, the United States adds that Mr. Miles died on September 26, 2005.

**United States District Court**
For the Northern District of California

Therefore, Ms. Miles signed and filed the joint return with Mr.
Miles for the 1995 tax year. Id. at ¶ 9.

On August 31, 1998, the Internal Revenue Service (IRS) made
an assessment against Mr. and Ms. Miles for unpaid federal taxes
in the amount of $99,661 for the 1995 tax year. Comp. ¶ 10. The
tax liability was attributed mainly to Mr. Miles' wages. Ms.
Miles had generated an income of only $20,612 during the 1995 tax
year; this figure comprised less than five percent of the total
income on the 1995 joint tax return. Miles Dec. ¶ 10.

On October 5, 1998, Ms. Miles and her daughter, Ms. Miles-
Toland, purchased a condominium at 90 Patrick Way, Half Moon Bay,
California. According to the deed, Ms. Miles took ninety percent
ownership and Ms. Miles-Toland took ten percent ownership.
Id. at ¶ 13. The purchase price was $421,974.71. Id. at ¶ 14.
Ms. Miles supplied the down payment in the amount of approximately
$158,164, and Ms. Miles and Ms. Miles-Toland obtained a loan for
$250,000. Id. at ¶ 14; Miles-Toland Dec. ¶ 4. Since October 5,
1998, Ms. Miles-Toland has made all payments of principal,
interest, property taxes and insurance on the property, as well as
homeowners association fees, maintenance and repairs. Miles-
Toland Dec. ¶¶ 4-5.

On March 9, 1999, the IRS filed a Notice of Federal Tax Lien
against Mr. and Ms. Miles for the unpaid taxes for the 1995 tax
year. Stamm Dec., Ex. E.

**United States District Court**
For the Northern District of California

On September 5, 2003, Ms. Miles-Toland refinanced the property. Ms. Miles did not receive any of the proceeds from the refinance.[3] Miles-Toland Dec. ¶ 6.

On November 21, 2003, Ms. Miles-Toland and her husband, Mr. Toland, created the Toland Revocable Trust. <u>Id.</u> at ¶ 3.

On April 12, 2007, Ms. Miles transferred her entire interest in the property by quitclaim deed to Ms. Miles-Toland and Mr. Toland as Trustees of the Toland Revocable Trust. Miles Dec. ¶ 15. As co-trustees, Ms. Miles-Toland and Mr. Toland hold record title to the property. Miles-Toland Dec. ¶ 3. At the time of the transfer, Ms. Miles-Toland was unaware of the tax lien on the property. <u>Id.</u> at ¶ 8.

On April 3, 2008, the IRS refiled a Notice of Federal Tax Lien against Ms. Miles. Stamm Dec., Ex. F.

On May 28, 2010, the United States filed this action asking the Court to 1) enter judgment against Ms. Miles for the outstanding federal tax assessment in the amount of $262,050 plus any interest and statutory additions since May 31, 2010; and 2) order the sale of the property, to which the United States' lien attached, for the payment of Ms. Miles' tax debts. The United States now moves for summary judgment.

---

[3] In its Case Management Statement, the United States adds that $244,539.85 was paid to satisfy the original mortgage and the remaining $100,000 went to Ms. Miles-Toland.

DISCUSSION

I.  Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

II.  Innocent Spouse Relief under 26 U.S.C. § 6015(f)

     Ms. Miles argues that she should be relieved from joint and several liability for the 1995 tax assessment because she is an innocent spouse pursuant to the Internal Revenue Code, 26 U.S.C. § 6015(f).  According to Ms. Miles, her eligibility for such relief is a question of disputed fact which precludes summary judgment.  The United States contends that district courts do not have jurisdiction to grant innocent spouse relief.  The United States is correct.

     To secure equitable relief as an innocent spouse pursuant to 26 U.S.C. § 6015(f), a taxpayer must first "file Form 8857 or other similar statement" with the IRS.  26 C.F.R. § 1.6015-5(b).  Here, Ms. Miles has not filed form 8857 with the IRS seeking innocent spouse relief.  Miles Dec. ¶ 12.  Because 26 U.S.C. § 6015(f) and 26 C.F.R. § 1.6015-5(b) provide that a taxpayer claiming innocent spouse relief must first exhaust remedies with the IRS, and because the provision and regulations concerned do not permit district courts to determine whether the taxpayer qualifies for innocent spouse relief, this Court cannot consider Ms. Miles' request for equitable relief as an innocent spouse. See United States v. Boynton, 2007 WL 737725, at *3 (S.D. Cal.) (holding that the district court has no jurisdiction to consider the innocent spouse defense when the taxpayer has not first sought such relief with the IRS).

**United States District Court**
For the Northern District of California

1    Thus, Ms. Miles' affirmative defense pursuant to 26 U.S.C.

2  § 6015(f) is DISMISSED without prejudice.

3  III.  Duress

4    Ms. Miles argues that she signed the 1995 joint tax return

5  under duress.  Miles Dec. ¶¶ 1-7.  When a husband and wife file a

6  joint tax return, the tax is computed on the aggregate income and

7  the tax liability is joint and several.  26 U.S.C. § 6013(a) and

8  (d)(3).  However, where one spouse signs a return under duress, it

9  is not a joint return for purposes of section 6013(a).  Thus, the

10 spouse who signed the return under duress will not be held jointly

11 and severally liable for any deficiency in tax that the

12 Commissioner determines.  Stanley v. Comm'r of Internal Revenue,

13 81 T.C. 634, 637-38 (1983).  To establish that a return was signed

14 under duress, the spouse must "show both (1) that he or she was

15 unable to resist demands to sign the return, and (2) that he or

16 she would not have signed the return except for the constraint

17 applied to his or her will."  Id. at 638.  In other words, the

18 spouse must demonstrate that he or she had no choice in executing

19 his or her signature and, further, that he or she was reluctant to

20 do so.  Brown v. Comm'r of Internal Revenue, 51 T.C. 116, 119

21 (1968).  The determination of whether a spouse signed a return

22 under duress is dependent on the facts and is measured by a wholly

23 subjective standard.  Hiramanek v. C.I.R., 102 T.C.M. (CCH) 546,

24 at *3 (2011).

25

26

27

28

Here, the United States concedes that it has no reason to challenge Ms. Miles' allegations that she was subjected to emotional and verbal abuse throughout her marriage. It argues, however, that Ms. Miles' stated reason for signing the 1995 joint tax return twelve years after the marriage had ended does not suggest that Ms. Miles was unable to resist Mr. Miles' demand to sign the return, or that she would not have signed the return absent his constraint. The Court agrees.

In Hiramanek, 102 T.C.M. (CCH) 546 at *3-4, the court found the wife's documented history of physical and verbal abuse throughout the twelve-year marriage along with the husband's violent reaction to the wife's refusal to sign the joint tax return was sufficient to show that the wife signed the return under duress. The wife had recorded in her diary numerous instances of threats against her life, physical assaults and verbal abuse leading up to the evening when her husband demanded that she sign the return. Id. at *1. On that evening, the husband presented to the wife a copy of a joint tax return for her signature. Id. The wife initially refused to sign without first reviewing the return; and after being able to view it, the wife again refused to sign because she noticed that her husband had overstated a casualty loss. Id. The wife's refusal to sign the return angered her husband; he grabbed her left arm and twisted it, struck her on the back of her head and pulled her hair with both hands. Id. Yet, she still refused to sign the return. Id.

United States District Court
For the Northern District of California

However, the wife changed her mind moments later after her husband cornered her, threatened to cause her physical harm and threatened that she would never see her children again if she did not sign the return. Id. The next day when the husband presented her with a new return with the casualty loss entry omitted, the wife signed the return without review because she feared for her safety. Id. The court found that the evidence presented was adequate to demonstrate that the wife was unable to resist the demand of her husband to sign the return and, further, that the wife would not have signed the return absent the constraint that her husband applied to her will. Id. at *3-4.

In the present case, by contrast, the Court finds that Ms. Miles fails to present evidence sufficient to amount to a dispute of material fact that she was unable to resist the demands of Mr. Miles to sign the return and, further, that she would not have signed the return absent the constraint that Mr. Miles applied to her free will. Ms. Miles fails to establish the first element of the duress defense that she was unable to resist the demands of Mr. Miles to sign the return. See Stanley, 81 T.C. at 638. The Court, like the United States, has no reason to challenge Ms. Miles' allegations that she was subjected to emotional and verbal abuse throughout her marriage. See Miles Dec. ¶ 1. Although a long continued course of mental intimidation can be effective in constituting duress, Furnish v. C.I.R., 262 F.2d 727, 733 (9th Cir. 1958), here Ms. Miles and Mr. Miles had been separated and no

longer living together for twelve years prior to her signing the return.[4]  Unlike in <u>Hiramanek</u>, the record in this case does not indicate that Mr. Miles made threats against Ms. Miles for a prolonged period prior to her signing the return or that Ms. Miles made any kind of objection to signing.  The Court finds that Ms. Miles fails to present sufficient evidence of the first element of the duress defense, that she had no choice but to sign.

Moreover, Ms. Miles fails to present evidence of the second element of the duress defense, that she would not have signed the tax return absent the constraint that Mr. Miles applied to her will.  <u>See</u> <u>Stanley</u>, 81 T.C. at 638.  Whatever amount of duress Ms. Miles faced from being under the influence of pain medication or from receiving Mr. Miles' threats to tear the family apart and complicate the settlement proceedings for the division of their marital assets, it did not cloud her perception or constrain her free will.  <u>See</u> Miles Dec. ¶¶ 5-7.  Ms. Miles does not explain, for example, that she was reluctant to sign the return because she believed it to be inaccurate or disadvantageous to her.  Rather, Ms. Miles states clearly that she signed and filed the return because she believed that Mr. Miles had the means to pay the liability.  <u>See</u> <u>id</u>. at ¶¶ 8-9.  Based on her explanation, the Court finds that Ms. Miles did not sign the return reluctantly.

---

[4] <u>See</u> Ms. Miles' Case Management statement.

United States District Court
For the Northern District of California

Because Ms. Miles fails to present evidence to satisfy both elements of the duress defense, the Court summarily adjudicates this issue in favor of the United States.

IV. Ownership of the Property

Ms. Miles and Ms. Miles-Toland argue that an issue of material fact exists with respect to Ms. Miles-Toland's percentage ownership interest in the property. They argue that, even if Ms. Miles' duress defense fails, the Court must determine their relative interests so that the proceeds from the sale of the property may be apportioned properly. Although Ms. Miles had quitclaimed her entire interest in the property to the Toland Trust, the United States' lien against Ms. Miles, which was placed prior to the transfer, remains valid; a quitclaim deed or other form of property transfer subsequent to the attachment of a lien does not affect the lien. United States v. Bank of Celina, 721 F.2d 163, 167 (6th Cir. 1983). Thus, the United States can seek to order the sale of the property for the payment of Ms. Miles' tax debts.

Ms. Miles and Ms. Miles-Toland concede that the deed indicates ninety percent ownership by Ms. Miles and ten percent ownership by Ms. Miles-Toland in the property. However, they argue that these percentages do not reflect their true intentions. Ms. Miles and Ms. Miles-Toland contend that California law permits an ownership interest in real property to be determined differently than indicated in the deed. Citing Thomasset v.

United States District Court
For the Northern District of California

1   Thomasset, 122 Cal. App. 2d 116, 133 (1953), disapproved on other

2   grounds by See v. See, 64 Cal. 2d 778 (1966), Ms. Miles and Ms.

3   Miles-Toland argue that their conduct and declarations may

4   overcome the ownership interest indicated in the deed.

5       Specifically, Ms. Miles and Ms. Miles-Toland argue that their

6   respective contributions to the property demonstrate their true

7   intention that Ms. Miles-Toland would have an ownership interest

8   greater than the ten percent indicated in the deed.  They note

9   that Ms. Miles contributed approximately $158,164 towards the

10  purchase price of $421,974.71 whereas Ms. Miles-Toland has made

11  all mortgage and tax payments since the purchase date.  See Miles

12  Dec. ¶ 14; Miles-Toland Dec. ¶ 4.  However, they do not provide

13  the actual amount Ms. Miles-Toland has paid, nor the exact amount

14  that is offset by Ms. Miles' rent payments and the amount Ms.

15  Miles-Toland took out in the refinance.

16      It may be appropriate to resolve the relative ownership

17  interests of Ms. Miles and Ms. Miles-Toland in the property in

18  order to apportion properly the proceeds from the sale of the

19  property.  Ms. Miles and Ms. Miles-Toland's evidence is sufficient

20  to create a dispute of material fact that could overcome the

21  presumption created by the deed.

22      Accordingly, the Court DENIES summary judgment on this issue.

23  V.   Reimbursement for Pre-Lien Contributions

24      Ms. Miles argues that, if the Court finds that the deed

25  reflects the ownership intentions, the Court should permit Ms.

Miles-Toland to recover her contributions to the property in excess of her ten percent share up to the date the lien was recorded on March 9, 1999.  The evidence is sufficient to raise a dispute of fact.  Once the Court has determined Ms. Miles-Toland's ownership interest in the property, it will determine whether Ms. Miles-Toland is entitled to recover her pre-lien contributions. The Court, again, will need an accounting of Ms. Miles' and Ms. Miles-Toland's net contributions to the total expenses.  Summary judgment on this issue is DENIED.

VI. Failure to Join All Defendants

Ms. Miles-Toland argued that summary judgment is not appropriate because the United States has not joined Mr. Toland, a co-trustee of the Toland Trust, as an indispensable party under Federal Rule of Civil Procedure 19.  The United States has since stipulated to add Mr. Toland as a party.

VII. Equity

Ms. Miles appears to make a free-standing argument that in equity she should not be required to pay the assessment in full, due to her age and financial circumstances.  She cites no authority for this proposition.  The United States does not address it.  If the Court were authorized to take such equities into account, the Court would need evidence of whether Ms. Miles benefited financially from Mr. Miles' failure to pay their joint tax liability.  Such evidence might include an explanation of

United States District Court
For the Northern District of California

their financial situation before and after their divorce, and their marital termination settlement agreement.

VIII. Certificate of Assessment and Payments

In support of its motion for summary judgment, the United States submits a certificate of assessment and payments to establish the dates and amounts of taxes due, the administrative assessment, and the notice and demand for payment made against Ms. Miles.  Stamm Dec., Ex. A.  A certified assessment for unpaid federal taxes, like the one in this case, is presumptively correct evidence of a taxpayer's liability.  United States v. Janis, 428 U.S. 433, 440 (1976).  The taxpayer must prove that the assessment is incorrect.  Ms. Miles-Toland argues that the United States' motion for summary judgment must be denied because it has not proved that the statute of limitations to collect the tax has not run.[5]  Ms. Miles-Toland fails to rebut the presumption that the certificate of assessment and payments against Ms. Miles is valid.

Ms. Miles-Toland argues that the certificate does not specify which entries subsequent to the Miles' divorce in 1996 are attributable to Ms. Miles and which entries are solely attributable to Mr. Miles.  Accordingly, Ms. Miles-Toland contends that the dates of the entries attributable to Ms. Miles are not clear from the certificate and therefore it is not clear whether

United States District Court
For the Northern District of California

---

[5] Generally, the IRS has ten years from the date the tax is assessed to collect the tax.  I.R.C. § 6502 (2010).

14

**United States District Court**
For the Northern District of California

the United States' ten-year statute of limitations to collect the tax on the entries attributable to her has not run.

This argument fails.  The United States' certificate of assessment need not distinguish the entries attributable to Mr. Miles from those attributable to Ms. Miles because Mr. and Ms. Miles filed a joint return for the 1995 tax year.  Accordingly, Ms. Miles is liable for the entire amount of the tax deficiency because the Miles' tax was computed on their aggregate income and their tax liability was joint and several.  See 26 U.S.C. § 6013(a) and (d)(3).

The United States' certificate of assessment establishes the amount of taxes due and that an assessment, notice and demand on Ms. Miles for her liabilities were made properly and timely.  Ms. Miles-Toland has offered only a vague and conclusory allegation that the certificate is insufficient.  Such argument does not overcome the presumption that a certified assessment is valid. See Janis, 428 U.S. at 440.  Ms. Miles-Toland does not raise a genuine issue of material fact that the assessment was arbitrary or without foundation.

Thus, the Court summarily adjudicates that the United States' certificate of assessment and payments is valid and timely.

CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Ms. Miles' innocent spouse defense is DISMISSED without prejudice.

2. Ms. Miles' duress defense is summarily adjudicated in favor of the United States.

3. The Court DENIES summary judgment on the issues of the ownership percentages of the property and the propriety of reimbursement to Ms. Miles-Toland for pre-lien contributions.  The Court needs a full accounting of Ms. Miles' and Ms. Miles-Toland's net contributions to the total expenses of the property in order to adjudicate the issues of the ownership percentages of the property and reimbursement for pre-lien contributions.

4. The Court summarily adjudicates that the United States' certificate of assessment and payments is valid and timely.

   IT IS SO ORDERED.

Dated: 3/30/2012



CLAUDIA WILKEN
United States District Judge